JESSIE B. PARSONS, Respondent, v. FRANCES J. HENRY, Appellant.

Kansas City Court of Appeals, February 16, 1914.

1. **LIBEL AND SLANDER: Abandonment: Adultery.** To say of a woman that, "This boy's mother (meaning plaintiff) abandoned her child when he was four years old and went away with another man" is not slander *per se*. It does not so charge abandonment of a child as to constitute a crime; nor does it charge adultery or unchastity. But with proper extrinsic allegations, it may be shown to be a slander as applied to plaintiff.

2. ———: **Evidence: Literal Proof: Substantial Words.** The very words charged in slander must be proven, or enough of the substantial words in a charge in a petition to make out the offense must be literally proved.

3. ———: **Substance: Substantially: Identically.** The rule sometimes stated, that proof of the words of a charge in a petition for slander "in substance" or "substantially" will suffice, does not mean that you need not make proof of enough of the very words which make the offense charged, for that must be done. It means that if you prove identically enough of the substantial words which constitute the charge, it will suffice. Although the proof may embrace more words or less than are charged.

4. **INSTRUCTIONS.** It is error to instruct the jury for plaintiff that proof of the words charged, or substantially those words, will suffice, for which the judgment should be reversed.

ON MOTION FOR REHEARING.

**PRIVILEGE: Extraneous Matter: Slander.** Voluntary explanation to a physician of the relation his informant bore to a patient and not necessary to his understanding so as to affect his attending the patient, is not privileged. It is extraneous matter, which, if slanderous will render the party liable.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson,* Judge.

Parsons v. Henry.

REVERSED AND REMANDED.

*Botsford Deatherage & Creason* for appellant.

*Omar E. Robinson, H. H. McCluer* and *Jay Reed* for respondent.

ELLISON, P. J.—Plaintiff's action is for slander. The judgment in the trial court was for her.

The charge in the petition is that "This boy's mother (meaning plaintiff herein) abandoned her child when he was four years old and went away with another man. That by said words and statement defendant meant and intended to charge plaintiff with going away with a man other than her husband for the purpose of illicit cohabitation, and meant and intended to charge this plaintiff with unchastity and immorality and with living in adultery and with abandoning and leaving to the care of strangers her infant child, and that said words were so understood by the parties who heard them."

The words charged, standing alone, are not slanderous *per se*. They do not impute a crime, nor that plaintiff was unchaste or guilty of adultery. Merely to abandon a child is not necessarily a crime. The statute (Sec. 4490, R. S. 1909) makes it a crime if a father or mother shall expose a child under six years of age "in a street, field or other place, with intent wholly to abandon it," etc. So to say of a woman that she abandoned her child and "went away with another man" does not necessarily mean that she was committing adultery. There are many innocent ways in which a woman may go away with "another man." [Lemaster v. Ellis (not yet reported) 158 S. W. 904.]

If the words charged are slanderous *per se,* no innuendo is necessary (Ogden on Libel and Slander 100, 473), but if they are not in themselves actionable, they cannot be rendered so by innuendo, without some averment of extrinsic facts which makes them so. [Townsend on Slander, sec. 336.] For, while the stat-

ute (Sec. 1837, R. S. 1909) makes it unnecessary to
state extrinsic facts, yet it only means it is unneces-
sary to allege that the words applied to the plaintiff.
It is still required to state such extrinsic facts as are
necessary to shows the words are slanderous. [Tilles
v. Publishing Co., 241 Mo. 609-632; Curry v. Collins,
37 Mo. 328, 329; Christal v. Craig, 80 Mo. 367, 373.]

And here extrinsic circumstances are stated in the
petition which shows the charges are such that if ap-
plied to this plaintiff, are slanderous. She is alleged
to have been a woman above reproach in character and
married and living with her husband. This is followed
by the words alleged to be slanderous, which in turn,
are followed by a statement, by way of innuendo, of the
slanderous meaning intended, viz., going off with a
man, other than her husband, in adultery. We think
the petition sufficient.

Defendant insists there was a failure of proof.
The evidence for plaintiff has been torn into pieces by
defendant and parts of it presented to us which, if all,
would justify the claim. But the principal witness
stated positively that he remembered the words used
by defendant in addressing her conversation to him
and they were these: "This boy's mother abandoned
him when he was four years old, or when he was an in-
fant child—she abandoned him and went away with
another man who is not her husband, but I will say for
her that she afterwards married that man she went
away with, and I took this child over, and the neigh-
bors found homes for all of them."

Here is evidence literally sustaining the greater
part of the words of the petition, and which proves all
the substantial words in the charge. The petition is
that "This boy's mother abandoned her child when he
was four years old;" and the proof is in those words
except "him" is substituted for "the child," and the
expression, "an infant child," is put in the proof as
an alternative for "four years old." That is, the wit-

ness stated it was one or the other. The charge that she "went away with another man," is proven literally with the additional words, "who is not her husband," etc. The slanderous part of the charge is that plaintiff "went away with another man" and these were proven literally.

Plaintiff claims that, substantially, this was proof of the words charged and that no more was necessary. The rule in this State is that the words proven must be the same in substance as those charged, and that equivalent words will not do. [Berry v. Dryden, 7 Mo. 324.] In that case Judge Scott said that "The rule is stated in the books, that the slander proved must substantially correspond with that charged in the declaration." It is this expression that the words proven must "substantially" correspond with those charged, that has caused some confusion. So the judge in the case just cited, said that it must not be understood that it will suffice if the proof be of words which convey the same imputation as those charged. He stated that "The meaning of the rule seems to be, that, if the words charged to have been spoken are proved, but with the omission, or addition of others not at all varying, or affecting their sense, the variance will not be regarded." The Judge then quotes from Maitland v. Golldney, 2 East 438, "Though the plaintiff need not prove all the words laid, yet he must prove so much of them, as is sufficient to sustain his cause of action, and it is not enough for him to prove equivalent words of slander." That case has been approved a number of times. [Birch v. Benton, 26 Mo. 153; Attebury v. Powell, 29 Mo. 429, 435; Bundy v. Hart, 46 Mo. 460; Nicholson v. Rogers, 129 Mo. 136.]

From this and other authority, we understand the rule to be that when it is said that the words proven must "substantially" or "in substance" correspond with those charged, it is not meant that you can sustain the charge by proof of different words, although they

mean the same thing; but you must prove enough of the *same* words as will make out the crime, and though you should prove more or less words than those alleged, yet if those you do prove as they are alleged are sufficient to make the charge, you have then substantially proven the words charged. Or, as it may be expressed, you have proven enough of the substantial words of the charge to make out the offense. Some expressions in parts of opinions may well lead one to conclude that proof of the words, "substantially," or "in substance," will suffice, but this is not what is meant.

If they applied to the words it would nullify the conceded rule that proof of equivalent words, or similar words, will not suffice. In Clements v. Maloney, 55 Mo. 352, 357, the defendant insisted that "the identical words laid in the petition must be proved or at least enough of the words laid must be proved, to constitute the slanderous charge imputed or charged to have been imputed in the petition." Of this the court said: "There is no doubt but the proposition as stated by the defendant is correct. The same words, or enough of the same words laid in the petition must be proved to constitute the offense charged to have been imputed, and it will not do to prove different words of similar import." Frequently the courts have used the words "substance" or "substantially" so as to appear to mean that the slander may be proved in words substantially like those used in the petition. But that is not the meaning. Such language is dubious, but the meaning is that though you prove more or less words than those charged, if you prove enough of the literal words of the petition to constitute the slanderous offense complained of, you have made out a case. It is never meant that you need not prove enough of the *very* words used in the petition to make out the offense. If enough of the substantial words in the charge, identically as laid, are proven to make out the

offense it will suffice, though all, or more, may be proven. In Pennington v. Meeks, 46 Mo. 217, 219, the court said that "All the words charged need not be proved, either substantially or at all. It is sufficient to prove the identical words which of themselves constitute the slanderous imputation." In Birch v. Benton, supra, it is stated "a great deal may be said which does not vary the meaning of the offensive words, and therefore a variance between the declaration and proof as to the part of a statement which does not effect the sense will be immaterial; but the words that contain the poison to the character and impute the crime must be proved as laid; and this seems to be what is meant by the cases when they say that the words proved must substantially correspond with those charged."

This brings us to an objection of sufficient importance to require a reversal of the judgment. Plaintiff's first instruction required the jury to find that defendant spoke the words stated in the petition (setting them out) "or substantially those words." The foregoing remarks will show how liable the jury would be to put an erroneous construction on that qualification. [Atteberry v. Powell, supra.] In speaking of a like instruction in that case the court said they were objectionable unless explained. It is true a similar instruction was given for the plaintiff in Clements v. Maloney, supra, but the court held that all the instructions together, some of them containing specific directions that enough of the *very* words of the petition must be proven to make out the charge, was sufficient to cure the fault of the objectionable ones taken alone. But in this case no other instructions were given which in any way explained what was intended by the court in using the word "substantially."

So the instruction is erroneous in omitting to require the jury to find such of the extrinsic facts as made the words actionable as applied to the plaintiff.

Since the words, as charged, did not constitute slander *per se,* mere proof that they were spoken will not suffice.

The judgment is reversed and cause remanded. All concur.

## ON MOTION FOR REHEARING.

Defendant has filed a motion asking the court to modify its judgment remanding this cause for another trial and to order that it be merely reversed. The principal ground relied upon in support of the motion is that the slanderous words, under the evidence in plaintiff's behalf, were privileged, or, at least, *quasi* privileged. The ground of privilege claimed is that the words were uttered in a necessary communication from one physician to another concerning a patient. We are cited to Tilles v. Publishing Co., 241 Mo. 609, but it is without application to this case. We think it is quite clear that no question of privilege arose under the testimony. The evidence supporting the charge against defendant in no way involved any question of privilege. It showed that defendant is a woman physician residing in Kansas City and that the family of her parents resided on a farm some distance in the country. That plaintiff, residing also in Kansas City, is the mother of a young man who was visiting, or staying, with the family on that farm and that he had injured his leg so severely that it was afterwards amputated. When hurt he was brought to Kansas City for surgical treatment. At the time of his arrival there, perhaps before he had been taken to his mothers (plaintiff's) home, defendant called on witness Pearce, a surgeon in that city. It seems that a custom or courtesy, exists between physicians that they will render services gratuitously to the families of those in the profession. So, as Pearce testified, when defendant called on him, she said to him, "that she had a boy

whom she thought a great deal of, who was badly injured, and was not being very well taken care of; and I expressed some surprise about her having a child, and she told me that it was not her own natural child, but that it was an adopted child.'' It was at this point the slanderous words were uttered by defendant and ·she continued to say that she had taken care of him until he was old enough to work when he was hired out to a family, where he got his foot caught in the belt of a circular saw, drawing his leg in and they were bringing him to Kansas City. ''She wanted to know what it would cost to take the case and perform any operation that might be necessary, and I told her it would cost nothing at all if the boy was her boy. I told her that there would not be any charge for physicians did not render bills for services in one another's families—but I did not have to tell her that, for she knew the rule as well as I did.''

As was stated by the trial court, we cannot understand where there is any room to excuse a slander by the guise of privileged communication under this evidence. If we look to defendant's own testimony of course no excuse of privilege is found, for she denies saying what she is charged with, or anything at all like it. And manifestly there was no information in the words of the slander which, under the testimony of Pearce, would enable him to understand anything of the nature of the treatment it would be necessary to render the young man. Equally is it manifest that the information conveyed in the slanderous words could have nothing ·to do with the gratuitous services of Pearce. His offer of service without charge was called out by the statement to him by defendant that the patient was her son and when he expressed surprise that she had a son, she covered every possible necessity of explanation by the statement that he ·was her adopted and not her natural child. Where was the necessity for the words of slander? Her reason for adopting

him years before, had no connection with the matter in hand and could serve no purpose. It was voluntary and uncalled for defamatory matter.

In Sullivan v. Com. Co., 152 Mo. 268, 277-279, the Supreme Court quotes this from Odgers on Libel and Slander: "In making a communication which is only privileged by reason of its being made to a person interested in the subject-matter thereof, the defendant must be careful not to branch out into extraneous matters with which such person is unconcerned."

In Robnett v. Ruby, 13 Md. 95, a husband asked the defendant if he suspected his wife and daughter of stealing his money. Defendant answered that he had, "but that he did not suspect them now, because circumstances had lately occurred which took away those suspicions;" and added these slanderous words, "the girl that hired with us has got it." In an action by the girl it was held that these words were not privileged, the court stating that "It could not be necessary to charge the plaintiff with the theft in order to satisfy Furlow (the husband) that his wife and daughter were relieved from the accusation." And added that "None of the authorities cited by the appellee, authorize us in saying that the defendant was privileged in making the charge. 'Even where the communication is in it's nature privileged, the scope of the defamatory matter must not exceed the exigency of the occasion.' [Cooke on Defamation, 35, 36]."

In York v. Johnson, 116 Mass. 482, the plaintiff was a female singer in a church choir and the defendant was a male member of the board of stewards in the church. There was to be a Christmas festival for the Sunday School and a committee was chosen, plaintiff and defendant and one Walton being members. Defendant declined to serve and a Mrs. Newton, also one of the committee, asked him why. He refused to answer, and the next day she asked him again and

he still refused to answer; but on the following day she again urged him to tell his reasons, saying "that she knew that the fact that Walton and the plaintiff were on the committee was the reason and with a good deal of feeling wanted to know what he knew with reference to them why they were not suitable persons to be on the commitee." Defendant then said to her "Walton has got the clap;" and Mrs. Newton's curiosity getting the better of her modesty, asked him, "Where he, Walton, got it;" and he answered, "My informant said he did not know, but that he, Walton, had been with Mrs. York," the plaintiff. In an action for slander by Mrs. York, it was ruled by the trial judge and the Supreme Court on appeal, that the information thus given by defendant was not privileged. The latter court saying, "There was no duty which he owed to Mrs. Newton that authorized him to inform her of defamatory charges against the plaintiff, and no interest of his own which required protection that justified it. He had declined to serve upon the same committee with Mrs. York but he was under no obligation to give any reason therefor, . . . ."

The propriety of instructions can be gathered from what we have written. While instructions as to there being a presumption of malice should be omitted, and that matter be left as a question of proof, yet the evidence on that head, as in other cases, may consist of circumstances and reasonable inferences to be drawn from the facts proven.

We are not inclined to heed defendant's suggestion that the judgment should be reversed without remanding, on the ground that the jury must have found that there was no malice. Defendant denies speaking the words, but if we concede that plaintiff shows she did speak them and that proof is made of the extrinsic facts alleged it is not seen how the inference of malice could be resisted.

The motion for rehearing is overruled.